Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| HEATHER COX, | **COMPLAINT** |
| Plaintiff, | |
| vs. | *Jury Trial Demanded* |
| ROB KOLKMAN, CONSTABLE KOLKMAN LLC, and JOHN DOES 1-5, | Case Number: 1:24-cv-00098-JCB<br>Magistrate Judge: Jared C. Bennett |
| Defendants. | |

### JURISDICTION AND VENUE

1.      This action arises from Defendants' violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692, *et seq.,* the Utah Consumer Sales Practices Act (UCSPA) Utah Code Ann. § 13-11-1 *et seq*., and common law fraud.

2.      Jurisdiction in this case is founded upon 28 U.S.C. § 1331, § 1367, and 1343(a)(3) which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and transactions giving rise to Plaintiff's claims occurred within this federal judicial district and because the Defendants each conduct business and reside in the State of Utah within the meaning of 28 U.S.C. § 1391(b) and (c).

4.      This Court has personal jurisdiction over each of the Defendants in this case because they each collect debt in Utah, reside in Utah, conduct business in Utah, enter into agreements with Utah consumers, enforce consumer agreements in Utah, communicate with consumers in Utah, and avail themselves of the benefits of the Utah legal and judicial systems.

PARTIES

5.      The Plaintiff is a natural person who resides in Davis County, Utah and was directly harmed by Defendants' conduct and violations complained of herein.

6.      Defendant Rob Kolkman is an individual who committed, participated in, and financially benefitted from the conduct discussed herein. He is believed to reside at 6928 West Hunter Valley Drive, West Valley, Utah 84128.

7.      Defendant Constable Kolkman LLC is a limited liability company that committed, participated in, and financially benefitted from collecting the alleged debt from the Plaintiff. It is believed to be located at 6928 West Hunter Valley Drive, West Valley, Utah 84128.

8.      The John Doe Defendants are individuals or companies who committed, participated in, and financially benefitted from, the unlawful conduct discussed herein but whose true identities are not yet known with certainty.

9.      None of the Defendants are government employees or agencies.

10.     None of the Defendants are appointed as constables in Davis County, Utah.

11.     None of the conduct complained of herein constitutes official duties or duties Utah law authorizes or requires constables to perform.

FACTUAL ALLEGATIONS

**Alleged Debt**

12.     Sometime prior to October 20, 2022 Plaintiff is alleged to have incurred a debt (alleged debt) with America First Credit Union for personal, household, or family purposes.

13.     After the alleged debt fell past due, America First Credit Union assigned it to N.A.R. to collect.

14.     N.A.R. then hired Olson Associates P.C. dba Olson Shaner (Olson Shaner) to collect the alleged debt on its behalf.

15.     Olson Shaner then commenced a lawsuit on October 20, 2022 against the Plaintiff in Davis County, Utah on behalf of N.A.R. Inc.[1]

16.     Shortly thereafter, Olson Shaner obtained a judgment in the amount of $8,713.24.[2]

17.     On September 1, 2022 Olson Shaner requested a Writ of Execution that the Court issued a few days later on September 9, 2022.[3]

18.     The amount due for the alleged debt stated in the Writ of Execution was $8,923.24.

19.     Sometime after obtaining the Writ of Execution, Olson Shaner provided the Defendants with the Writ of Execution to collect the alleged debt on their behalf.

20.     The constable Defendants then began attempting to collect the alleged debt by, among other things, threatening to seize and sell Plaintiff's personal property, negotiating payment arrangements, collecting periodic payments,

---

[1] Exhibit P-1 State Court Complaint (*N.A.R. Inc., v. Heather Cox*, Case No. 219704509)
[2] Exhibit P-2 State Court Judgment
[3] Exhibit P-3 Writ of Execution

placing collection calls, mailing collection letters, adding amounts to the debt, and taking other similar actions.

**Defendants' June 13, 2023 Collection Letter**

21.     Sometime on or around June 13, 2023, the Defendants mailed Plaintiff a collection letter.[4]

22.     Plaintiff received and read Defendant's collection letter and its included Notice of Sale.

23.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' June 13, 2023 collection letter.

24.     The June 13, 2023 collection letter was styled as a court filing or legal process even though it was not.

25.     The letter the Defendants mailed to Plaintiff on June 13, 2023 included and referred to a Notice of Sale.

26.     The June 13, 2023 collection letter represented that sale fees may have been added to the alleged debt even though no such fees were ever incurred, allowed by law, or agreed to by Plaintiff.

27.     The June 13, 2023 collection letter was the initial collection communication the Defendants had with the Plaintiff but it did not provide notice that it was from a debt collector attempting to collect a debt and that any information obtained will be used for that purpose.

28.     None of the Defendants ever sent Plaintiff the notices required by 15 U.S.C. §§ 1692e(11) or 1692g(1).

---

[4] Exhibit P-4 Collection Letter

29.     Upon information and belief, Defendants mailed other collection letters to the Plaintiff that also asserted false representations and charged amounts and fees not allowed by law or agreed to by the Plaintiff.

**Defendants' Notice of Sale**

30.     The Notice of Sale included with the Defendants' June 13, 2023 collection letter stated that the Defendants were holding a sale of Plaintiff's personal property at Plaintiff's home on June 29, 2023 at 9:20.[5]

31.     An insignia of a sheriff-style law enforcement badge shaped like a star was printed at the top of the Defendants' Notice of Sale.

32.     The Notice of Sale included a solicitation of payment by card, cash, or certified funds and represented or implied that "immediate" contact to make a payment or arrangements was required to cancel the threatened sale.

33.     Defendants never carried out their threat to seize and sell Plaintiff's property.

34.     Defendants did not intend to hold a sale of Plaintiff's property on June 29, 2023.

35.     Plaintiff was not required to make a payment or arrangements to cancel the sale.

36.     Defendants never seized Plaintiff's property.

37.     Defendants never held a sale of Plaintiff's property.

38.     Defendants never publicly advertised a sale of Plaintiff's property.

---

[5] Exhibit P-5 Notice of Sale

39.     Because no seizure or sale ever actually occurred, none of the Defendants ever incurred any travel, advertising, service of process, or other similar fees and costs Defendants added to the alleged debt.

40.     Defendants were not legally capable of carrying out their threat of selling Plaintiff's property on June 29, 2023.

41.     Utah law requires Defendants to serve a writ of execution and provide a 14-day time period between the seizure and sale of a debtor's property to allow the debtor to object to the seizure, exercise their exemptions, and enforce their statutory and constitutional protections.

42.     Utah law requires constables serving process outside the county in which they are appointed to contact the sheriff's office or police department of the jurisdiction prior to serving executions or seizing any property.

43.     None of the Defendants were appointed as constables in Davis County and upon information and belief never contacted or notified the Davis County sheriff's office or police department of any service of process or the threatened seizure and sale.

44.     Defendants were prohibited by law from seizing or selling any of Plaintiff's property because they were not appointed in Davis County and upon information and belief never notified the Davis County sheriff's office or police department of the threatened seizure or sale prior to serving executions or seizing any property.

45.     Defendants regularly falsely threaten to hold property seizures and sales like the one made in their Notice of Sale.

46.     Defendants have an established policy and practice of falsely threatening to seize and sell debtor's property for the purpose of obtaining payments from those debtors rather than holding the threatened sales.

47.     Defendants' policy and practice deprived Plaintiff of her rights under federal law.

48.     At some point during the collection process, Kolkman or one of the John Doe Defendants physically pounded on Plaintiff's door, loudly yelled accusations and demands through the door, and peered through Plaintiff's windows to intimidate, irritate, and otherwise harass and abuse Plaintiff and her family.

49.     There is nothing in Utah law that authorizes or requires constables to threaten to seize and sell property, negotiate payment arrangements, collect periodic payments, engage in collection telephone calls, mail collection letters, mail collection letters falsely formatted to look like court pleadings, or otherwise act as a debt collector.

50.     On the contrary, Utah law strictly limits a constable's official duties to; (1) attending justice courts within their appointed city or county; (2) executing, serving, and returning legal process within their appointed city or county; and (3) serving process throughout the state.[6] Constables may also evict tenants and execute writs to seize and dispose of property when properly authorized by a court of law.[7]

**Collection Phone Call with Olson Shaner**

51.     In response to Defendants' threats, on or around September 12, 2023, Plaintiff spoke with Olson Shaner by telephone.

---

[6] Utah Code Ann. § 17-25-1
[7] Utah Code Ann. §§ 17-25a-3(2), 78B-6-812(1), (3); Utah R. Civ. P. 64(a)(7), (d)

52.     During the September 12, 2023 phone call, Olson Shaner confirmed it hired the Constable Defendants to collect the alleged debt on its behalf.

**Notice of Claim**

53.     Plaintiff filed a Notice of Claim with Salt Lake County on October 11, 2023.

54.     Plaintiff filed another Notice of Claim with Ogden City on October 11, 2023.

55.     In response to the first Notice of Claim, Salt Lake County confirmed that the constables are not employed by the County, affiliated with the County, have never been contracted with the County, and are not agents of the County.

56.     In other cases, Salt Lake and Utah Counties have each confirmed that these constables are not government agencies, employees, or agents.

57.     The alleged debt at issue is not a government debt and was never owed to any government agency or office.

58.     None of the Defendants acts or practices at issue qualify as governmental functions.

59.     The State of Utah does not supervise the constable Defendants, does not employ the constables, does not pay the constable Defendants to collect the alleged debt, and did not engage the constable Defendants to collect the alleged debt.

60.     The constable Defendants do not report their collection efforts to the State of Utah or any other government agency or office, they are not paid to collect by any government office or agency, they do not remit consumer payments to any state or government office or agency, and no government office or agency ever engaged the constable Defendants to collect the alleged debt.

61.     Upon information and belief, no government agency or office has ever reviewed, approved, or authorized the constable Defendants' collection letters and Notice of Sale or reviewed, approved, or authorized the constable Defendants' use of the Writ of Execution to negotiate and collect payments from Plaintiff and other debtors.

62.     Because none of the Defendants are government agencies or employees, and because their conduct does not qualify as governmental functions, Defendants are not entitled to any governmental immunity or any other immunity for the acts and practices at issue in this case.

**Defendants are debt collectors under the FDCPA**

63.     Defendants regularly collect debts on behalf of others.

64.     Defendants regularly engage in collection communications by mail, by telephone, or in person.

65.     Defendants regularly negotiate payment arrangements, accept partial payments, and remit partial payments to the collection law firms for whom they collect debts.

66.     The Defendants have a regular established practice of receiving Writs of Execution from Olson Shaner and other collection lawyers to use those Writs to collect debts on their behalf.

67.     Upon information and belief, over the last five years, the Defendants regularly used collection letters and writs of execution to negotiate and obtain payments from consumers in thousands of other cases.

68.     Upon information and belief, Olson Shaner regularly used the Defendants to collect debts in the same manner at issue here in more than 1000 other cases over the last five years.

69.     Other law firms such as Mountain Land Collections and The Cherrington Firm have also regularly used these Defendants to collect payments in over 1000 cases in the last five years.

70.     Mountain Land Collections provided the Defendants more than 1300 writs of execution from January 1, 2022 to April 15, 2024.

71.     Defendants have never conducted any personal property sales for Mountain Land.

72.     Upon information and belief, Defendants have not conducted any personal property sales on behalf of Olson Shaner in the last five years.

73.     Instead of conducting property sales on behalf of others, Defendants negotiate and collect periodic payments.

74.     The constable Defendants sent collection letters, made collection calls, attempted to negotiate payments, and used writs of execution and the false threats of selling property to collect and attempt to collect debts on behalf of various debt collection lawyers in the following cases:[8]

74.1.   N.A.R. Inc., v. Elizabeth Hernandez (Case No. 209913641)

74.2.   N.A.R. Inc., v. Kendall Thomas (Case No. 200906471)

74.3.   N.A.R. Inc., v. Lindsay Campbell (Case No. 229103482)

74.4.   N.A.R. Inc., v.  Heidi Cordero (Case No. 229915572)

74.5.   N.A.R. Inc., v. Luke Ware (Case No. 229102907)

74.6.   N.A.R. Inc., v. Allison Ekstrom (Case No. 230902746)

74.7.   N.A.R. Inc., v. Teisha Olsen (Case No. 219915781)

74.8.   N.A.R. Inc., v. Jammie Crocket (Case No. 239100455)

---

[8] This is only a partial list compiled using information from the Utah Court's Xchange case management system. Plaintiff believes the true number of similar cases in just the last year alone is at least a few hundred cases.

74.9.   N.A.R. Inc., v. Teresa Avila (Case No. 239900831)

74.10.  N.A.R. Inc., v. Terry Hodges (Case No. 239100384)

74.11.  N.A.R. Inc., v. Erin Asay (Case No. 239101226)

74.12.  N.A.R. Inc., v. Jessica Joule (Case No. 230902589)

74.13.  N.A.R. Inc., v. Danel Ekins (Case No. 239101520)

74.14.  N.A.R. Inc., v. Andrea Duffin (Case No. 189705690)

74.15.  Wasatch Mental Health v. Stacy Kidrick (Case No. 209401013)

74.16.  Credit Service of Logan Inc., v. Gary Wolf (Case No. 229914796)

74.17.  Credit Service of Logan v. Clothilde White (Case No. 239902320)

74.18.  Brigham Young University v. Tara Peretto (Case No. 179104089)

74.19.  Mountain Land Collections v. Charles Young (Case No. 229102019)

74.20.  Mountain Land Collections v. Brandon Potter (Case No. 239100435)

74.21.  Mountain Land Collections v. Anna Hardman (Case No. 229800165)

74.22.  Mountain Land Collections v. Maria Plumb (Case No. 229703675)

74.23.  Mountain Land Collections v. Cassidy Holdaway (Case No. 219911975)

74.24.  Mountain Land Collections v. Anita Allman (Case No. 199105070)

75.     Defendants were not the original creditors in any of the above-noted cases or in any other cases they seek to collect for others.

76.     Upon information and belief, in each case noted above, the Defendants performed the same or similar illegal collection efforts on behalf of the collection law firms that hired them as they did in this case.

77.     Upon information and belief, collecting debts is the Defendants' principal purpose.

78.     Kolkman maintains Defendant Constable Kolkman LLC for the principal purpose of collecting debts.

79.     Upon information and belief, collecting debts on behalf of others is a primary source of the Defendants' revenue and takes up a majority of their time and efforts.

80.     In addition to Olson Shaner, other debt collectors, including The Cherrington Firm and Mountain Land Collections, have also tasked the constable Defendants with collecting various debts on their behalf.

81.     Upon information and belief, the Defendants maintain business systems that include; debt collection software, personnel, telephones, phone lines, computers, other office equipment, and other similar systems to facilitate their debt collection efforts.

**Defendants collect debt using instrumentalities of interstate commerce**

82.     Each of the Defendants regularly communicate with consumers and receive correspondence and payments from consumers to collect debts through the United States Postal Service, third party mail couriers, and the Internet.

83.     Each of the Defendants regularly communicate with consumers to collect debts by telephone, text message, and email.

84.     Each of the Defendants regularly accept, process, and deposit credit card and debit card payments and other payments through consumers' bank accounts which are processed electronically through the Internet.

85.     Upon information and belief, when the Defendants collect money from consumers on behalf of various collection law firms, they remit payments electronically through the Internet to those law firms.

**None of the Defendants are exempt from the FDCPA's definition of a debt collector**

86.     None of the Defendants are employed by Davis County or any other government agency.

87.     None of the Defendants were acting on behalf of any government agency when engaging in the conduct discussed herein.

88.     None of the Defendants were serving legal process when engaging in the conduct discussed herein.

89.     None of the Defendants are creditors of the alleged debt.

90.     None of the Defendants were collecting in the name of the original creditor.

91.     All of the Defendants began collecting after the alleged debt fell past due.

92.     Mailing collection letters, engaging in telephone communications, soliciting, negotiating, and accepting monthly payment arrangements, adding fees and other amounts to debts, verifying assets, and collecting periodic payments are normal debt collection practices but are not service of process of legal papers.

93.     At all times relevant to this case none of the Defendants were duly registered or bonded with the State of Utah as debt collectors.[9]

94.     Because they were not duly registered or bonded with the State of Utah, the assignment of the debt to the constable Defendants for collections was void, criminal, and otherwise illegal.[10] Any and all collection activity based on those illegal assignments was therefore fraudulent, deceptive, abusive, and illegal.

---

[9] Utah Code Ann. § 12-1-1 *et seq*.
[10] Utah Code Ann. § 12-1-8

**Damages**

95.     Plaintiff received and read each of the Defendants' collection letters and their Notice of Sale and personally participated in the collection phone call with Olson Shaner.

96.     Because Plaintiff reasonably believed the Defendants' unintended and unlawful threats and demands, she attempted to make payment arrangements with the Defendants and hired an attorney to defend her from those threats and demands.

97.     But for the Defendants' unintended and unlawful threats and demands, Plaintiff would not have hired an attorney, contacted the Defendants, or attempted to pay the Defendants.

98.     As a direct and proximate result of Defendants' acts and practices, Plaintiff incurred attorney's fees and costs and suffered concrete and actual personal injury damages.

99.     Plaintiff suffered from fear, headaches, confusion, anger, sleepless nights, anxiety, shortness of breath, and other similar personal physical injuries as a result of the Defendants' acts and practices.

100.     Plaintiff's damages also include, *inter alia*; deprivations of her Constitutional and civil rights, invasion of privacy, intrusion upon her seclusion, physical trespass, emotional distress, humiliation, stress, anxiety, frustration, outrage, panic, and other personal injuries and emotional distress.

COUNT I
**Fair Debt Collection Practices Act**
*15 U.S.C. § 1692 et seq.*

101.     Plaintiff incorporates the allegations set forth in paragraphs 1 to 100.

102.    Each collection letter and telephone call the Defendants had with the Plaintiff is a "communication" as defined in 15 U.S.C. § 1692a(2).

103.    Defendants are all debt collectors as defined by 15 U.S.C. § 1692a(6) because each Defendant regularly collects or attempts to collect debt originally owed or due to others and their principal purpose is the collection of debt.

104.    The representations, implications, demands, threats, conduct, actions, and omissions by which the Defendants collected the alleged debt caused Plaintiff damages as described herein and were violations of numerous and multiple provisions of 15 U.S.C. § 1692 *et seq.*, including, among others, 15 U.S.C. § 1692d, 1692e, 1692f, and 1692g.

105.    Defendants violated the FDCPA by operating under a false, misleading, or unregistered business, company, or organization name that was not the true name of the debt collector's business, company, or organization.

106.    Defendants violated the FDCPA by attempting to collect more than 40% of the principal amount of the debt owed to the creditor.

107.    Defendants violated the FDCPA by sending collection letters and notices that purport to be legal filings or process when they were not.

108.    Defendants violated the FDCPA by sending collection letters and notices purporting to be official government communications when they were not.

109.    Defendants violated the FDCPA by representing themselves as law enforcement, government officials, or state operatives in collecting the alleged debts when they were not acting in any official capacity.

110.    Defendants violated the FDCPA by attempting to collect Sale Fees that were not permitted by law.

111.    Defendants violated the FDCPA by falsely, fraudulently, and deceptively acting under the color of Utah law to collect the alleged debt.

112.    By pounding on Plaintiff's door, peering through Plaintiff's windows, and otherwise attempting to intimidate, harass, and oppress Plaintiff, Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692d(2), 1692e, 1692e(1), 1692e(4), 1692e(5), 1692(10), and 1692f.

113.    By placing an insignia of a sheriff-style law enforcement badge shaped like a star in their collection letters, Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(9), 1692e(10), 1692e(13), 1692e(14), and 1692f.

114.    Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) by representing that Plaintiff owed for amounts, costs, and fees that were not owed, authorized by the judgment, or permitted by law.

115.    Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), and 1692f, 1692f(1) by adding and threatening to add additional amounts that were not incurred, not permitted by law, and not authorized by the court.

116.    Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(4), 162e(5), 1692e(6), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692f, 1692f(1), and 1692f(6) by representing, implying, or threatening to seize and sell Plaintiff's property when such action could not be legally taken and was not intended to be taken.

117.    By representing that a sale was scheduled when it was not scheduled, intended, or legal to carry out, Defendants violated 15 U.S.C. §§ 1692d, 1692d(1), 1692e, 1692e(1), 1692e(2), 1692e(4), 162e(5), 1692e(6), 1692e(9), 1692e(10), 1692e(12), 1692e(13), 1692f, 1692f(1), and 1692f(6).

118.     Defendants violated the Fair Debt Collection Practices Act by failing to provide the notices required by 15 U.S.C. §§ 1692e(11).

119.     Defendants violated the Fair Debt Collection Practices Act by falsely representing the amount, character, legal status of the alleged debt.

120.     Defendants violated 15 U.S.C. § 1692e(12) by representing or implying that the alleged debt had been turned over to innocent purchasers of value when it was not.

121.     Defendants violated 15 U.S.C. § 1692g by failing to provide any of the notices required by that section.

122.     Defendants' collection communications, acts, and practices also violated other provisions of the FDCPA.

123.     As a result of the Defendants' violations of the FDCPA as discussed herein, Plaintiff suffered concrete actual damages as described herein and is entitled to an award against each of the Defendants jointly and severally for causing those damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2); and attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

COUNT II
**Utah Consumer Sales Practices Act**
*Utah Code Ann. § 13-11-1 et seq.*

124.     Plaintiff incorporates the allegations set forth in paragraphs 1 to 100.

125.     The Utah Consumer Sales Practices Act was enacted to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and to "recognize and protect suppliers who in good faith comply with the provisions of this act."[11]

---
[11] Utah Code Ann. § 13-11-2

126.    Under its plain language the UCSPA "shall be construed liberally" in the consumer's favor to promote those policies.[12]

127.    The UCSPA protects consumers from deceptive acts or practices whether they occur before, during, or after the consumer transaction.[13]

128.    The alleged debt was incurred for personal, family, or household purposes. It is therefore a consumer transaction under Utah Code Ann. § 13-11-3(2).

129.    Each collection letter, Notice of Sale, and telephone call the Defendants had with the Plaintiff is also a "consumer transaction" and attempt to enforce the alleged debt under Utah law.

130.    Each Defendant is a supplier since they regularly solicit, engage in, and enforce consumer transactions, whether directly or indirectly. They also received the alleged debt through assignment and then sought to enforce it and regularly do the same in other cases.

131.    By engaging in the acts and practices discussed above, Defendants each violated Utah Code Ann. §§ 13-11-4 and 5 which prohibit deceptive and unconscionable collection practices whether they occur before, during, or after the transaction.

132.    Defendants violated the Utah Consumer Sales Practices Act by knowingly and intentionally:

> 132.1.  making false and illegal threats to seize and sell Plaintiff's property;
>
> 132.2.  falsely representing or implying their actions were legal and authorized by the law when they were not;

---

[12] *Id.*
[13] Utah Code Ann. 13-11-4(1)

132.3.  charging Plaintiff for amounts she did not agree to pay;

132.4.  adding amounts to the alleged debt Plaintiff did not agree to pay;

132.5.  adding amounts to the alleged debt that were not actually incurred;

132.6.  representing or implying that the constables are government officers, employees, or agencies, when they are not;

132.7.  falsely representing or implying that they and their collection acts and practices are approved, authorized, or otherwise sponsored by the court, county, or other governmental agency;

132.8.  falsely representing that Plaintiff was required to make contact and payment within ten days of the first collection communication when Plaintiff was not so required;

132.9.   falsely indicating or implying that because Olson Shaner hired the constables to collect as their surrogate debt collectors that Plaintiff is somehow deprived of her legal and constitutional rights and protections;

132.10.  using the office and status of a constable and acting under the color of law to coerce, intimidate, extort, and trick Plaintiff into communicating and attempting to make payment arrangements she was not otherwise required to make; and

132.11. holding the constables out as law enforcement officers when they were collecting debts instead of serving legal process or performing any other lawful duties.

133.  Defendants' other knowing and intentional conduct, threats, representations, and other actions discussed herein also constitute violations of the Utah Consumer Sales Practices.

134.    Defendants' conduct described herein was unconscionable as it was willful and malicious, intentionally fraudulent, or manifested a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff.

135.    By engaging in the conduct described herein, the Defendants exercised a gross inequality of bargaining power and deprived Plaintiff of any meaningful choice.

136.    No decent, fair-minded person would view the Defendants' conduct, or the lack of any meaningful choice that conduct created, without being possessed of a profound sense of injustice.

137.    As a result of Defendants' violations of the UCSPA, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against Defendants, jointly and severally, for actual and punitive damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to Utah Code Ann. § 13-11-19 and Utah Code Ann. §78B-8-201.

## COUNT III
## Fraud

138.    Plaintiff incorporates the allegations set forth in paragraphs 1 to 100.

139.    Each of the Defendants committed fraud by knowingly and intentionally making fraudulent representations, implications, and threats about their legal ability to; collect the alleged debt, enforce an invalid Writ of Execution, execute on Plaintiff's property, solicit and receive payment for the alleged debt, deprive Plaintiff of her property without due process of law, and other similar fraudulent representations.

140.    Each of the Defendants committed fraud by knowingly and intentionally presenting their collection letters and Notice of Sale as legal filings or court documents.

141.    Defendants committed fraud by representing the constables as law enforcement, government officials, or state operatives in collecting the alleged debts when they were not acting in any official or state capacity.

142.    Defendants committed fraud by collecting the alleged debt knowing it was unlawful and criminal for them to engage in a debt collection business without the required state registration and bond.

143.    Defendants committed fraud by representing or implying the debt was assigned to them for collections when the assignment was void as a matter of law.

144.    Defendants committed fraud by impersonating government officials, misrepresenting the Plaintiff's rights, and simulating court paperwork.

145.    Defendants committed fraud by falsely representing that the Writ of Execution granted them authority to engage in debt collection without being subject to state and federal laws that govern debt collection practices.

146.    Defendants committed fraud by misrepresenting the legal effect and scope of the Writ of Execution.

147.    Defendants committed fraud by making false and deceptive representations, implications, threats, and omissions about scheduling, advertising, and postponing the property sale that was never actually intended, scheduled, or legal.

148.    Defendants committed fraud by knowingly and intentionally making false and deceptive representations, implications, threats, and omissions about their

authority to allow the general public into Plaintiff's private property and residence.

149.     Upon information and belief, each of the Defendants knowingly and intentionally engaged in other fraudulent representations, omissions, and implications that Plaintiff, the State of Utah, or the court relied on without knowing it was fraudulent.

150.     Each of fraudulent implications, representations, and omissions discussed herein were made to induce Plaintiff or others into acting on their behalf.

151.     Each of the fraudulent implications, representations, and omissions at issue were material as they formed the basis for allowing the constables to attempt to coerce Plaintiff into paying amounts she was not required to pay.

152.     Plaintiff reasonably believed and relied on the fraudulent conduct discussed herein and as a result attempted to arrange payments she did not have to pay and hired an attorney to stop the Defendants' illegal collection efforts.

153.     Plaintiff also incurred the other damages as discussed herein because of the fraudulent conduct by these Defendants.

154.     But for Defendants' fraudulent conduct, threats, implications, and representations, Plaintiff would not have communicated with Defendants or Olson Shaner, incurred any legal expenses, or incurred the personal physical injury damages discussed herein.

155.     Plaintiff and the state court were both ignorant to the falsity of Defendants' fraudulent representations, threats, implications, and conduct when they acted upon them.

156.     Defendants never corrected their false statements, omissions, and implications.

157.    The fraudulent communications, implications, and representations at issue were all made or omitted by the Defendants intentionally, knowingly, or with a reckless disregard for the truth.

158.    Because of the fraud discussed above by the Defendants, Plaintiff was harmed as discussed above and is entitled to an award of her actual damages, punitive damages, and court costs against all the Defendants jointly and severally.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against Defendant jointly and severally as follows:

1.    For an award of actual and statutory damages;

2.    For an award of punitive damages;

3.    For an award of Plaintiff's attorney's fees and costs;

4.    For pre-judgment and post judgment interest at the legal rates;

5.    For appropriate injunctive relief;

6.    For leave to amend this Complaint as the interests of justice allow; and

7.    For such other and further additional relief as may be determined to be appropriate and as the Court may find just, equitable, and proper.

JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

DATED 6/7/2024                    Eric Stephenson
                                 *Attorney for the Plaintiff*